**GAUNTLETT LAW**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
5 Pelican Vista Dr.
Newport Coast, CA 92657
(949) 553-1010 / Fax: (949) 533-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com

Attorneys for Plaintiff
Under the Weather, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNDER THE WEATHER, LLC | Case No. |
| Plaintiff, | |
| vs. | |
| OHIO SECURITY INSURANCE COMPANY, | **COMPLAINT FOR:** |
| OHIO CASUALTY INSURANCE COMPANY, | **(1) DECLARATORY RELIEF – FIRST UNDERLYING ACTION** |
| Defendants. | **(2) BREACH OF CONTRACT – FIRST UNDERLYING ACTION** |
| | **(3) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING – FIRST UNDERLYING ACTION** |
| | **(4) DECLARATORY RELIEF – SECOND UNDERLYING ACTION** |
| | **(5) BREACH OF CONTRACT – SECOND UNDERLYING ACTION** |
| | **(6) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING – SECOND UNDERLYING ACTION** |
| | **JURY TRIAL DEMANDED** |

323649_1.docx

Complaint

1.     Plaintiff Under the Weather, LLC ("UTW") is a business headquartered in OSIC that advertises and sells goods throughout the United States.  UTW sued some of its competitors in a lawsuit styled as *Under the Weather, LLC v. Jianyong Wen, et al.*, U.S.D.C. Central District of California, Case No. 2:23-cv-08343 (the "First Underlying Action"). Among those competitors were Alvantor Industry Company, Ltd. and Eighteentek, Inc. (collectively, "Claimants") who filed counterclaims alleging various causes of action against UTW. A true and correct copy of the Claimants' Answer and Counterclaim that includes the relevant allegations is attached as **Exhibit "1."**

2.     On September 10, 2025, Claimants filed a related lawsuit against UTW styled as *Alvantor Industry Co., Ltd, et al. v. Under the Weather, LLC*, U.S.D.C. Central District of California, Case No. 2:25-cv-08574 (the "Second Underlying Action") (collectively, with the First Underlying Action, the "Underlying Actions"). An amended complaint was filed in the Second Underlying Action on October 29, 2025. A true and copy of the amended complaint is attached as **Exhibit "2."**

3.     This case addresses the potential for insurance coverage under a Commercial General Liability ("CGL") policy issued by Defendant Ohio Security Insurance Company ("OSIC") and a Commercial Umbrella policy issued by Defendant Ohio Casualty Insurance Company arising out of the Underlying Actions.

4.     In this insurance coverage suit, Plaintiff UTW seeks: (i) a judicial declaration that Defendants OSIC and OCIC have a duty to defend and indemnify UTW in the Underlying Actions; (ii) damages from OSIC for its breach of contract; and (iii) damages from OSIC for its breach of the covenant of good faith and fair dealing.

### THE PARTIES

5.     Plaintiff UTW is a business headquartered in Cincinnati, Ohio and organized as an LLC under the laws of Ohio. Every member of UTW is domiciled in Ohio. Therefore, for diversity of citizenship purposes, UTW is a citizen of Ohio.

6.     On information and belief, Defendant OSIC is a corporation incorporated

in New Hampshire and has its principle place of business in Boston, Massachusetts. Therefore, for diversity of citizenship purposes, OSIC is a citizen of New Hampshire and Massachusetts.

7.      On information and belief, Defendant OCIC is a corporation incorporated in New Hampshire and has its principle place of business in Boston, Massachusetts. Therefore, for diversity of citizenship purposes, OCIC is a citizen of New Hampshire and Massachusetts.

## JURISDICTION

8.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the parties, as the Plaintiff is a citizen of OSIC and the Defendants are both citizens of Massachusetts and New Hampshire, for purposes of diversity jurisdiction.

10.     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as more than $75,000 has already been spent on defensive attorneys' fees in the Underlying Actions and UTW asserts that OSIC must reimburse all defensive fees incurred to date and moving forward. In addition to other relief, declaratory relief is sought.

11.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the contract and covenant of good faith and fair dealing claims.

## VENUE

12.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim alleged herein occurred in this District.

13.     The advertisements triggering potential coverage under OSIC's policy were disseminated and received by consumers within the jurisdiction of this Court.

14.     The defensive legal work that must be performed in the Underlying

Actions has been and will continue to be performed by lawyers practicing within the jurisdiction of this Court.

15.     The Underlying Actions themselves are being litigated here in the Central District of California.

16.     On information and belief, Defendants are an insurance companies actively selling insurance policies in California, including in the Central District of California.

17.     OSIC sold the CGL insurance policy at issue in this case to UTW to cover advertising disseminated across the United States, including here in the Central District of California.

18.     The OSIC policy at issue was intended to cover UTW's commercial interests in the Central District of California.

19.     OCIC sold the Commercial Umbrella insurance policy at issue in this case to UTW to cover advertising disseminated across the United States, including here in the Central District of California

20.     The OCIC policy at issue was intended to cover UTW's commercial interests in the Central District of California.

21.     The alleged wrongful conduct forming the basis of the Underlying Actions occurred within the Central District of California.

22.     Part of the performance required under the OSIC policy at issue, including, without limitation, the incurring and payment for attorneys' defense fees, occurred within the Central District of California.

## THE OSIC CGL POLICY

23.     OSIC sold UTW a CGL policy (Policy Number BKS(25) 56 13 11 66) for the period September 14, 2024 to September 14, 2025. A true and correct copy of the policy is attached as **Exhibit "3."**

24.     The policy contains the following coverage provisions for "personal and

advertising injury":

    1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

        (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

    b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

    25.    The policy also contains the following exclusions applicable to the policy's "personal and advertising injury" coverage:

    This insurance does not apply to:

a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

. . .

g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

. . .

i. Infringement of Copyright, Patent, Trademark or Trade Secret

"Personal and advertising injury" arising out of the

infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement". However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

26.     The policy contains the following definitions:

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

> a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
>
> b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

. . .

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

. . .

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

. . .

f. The use of another's advertising idea in your "advertisement" or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

. . .

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**THE OCIC UMBRELLA POLICY**

27.    OCIC sold UTW a Commercial Umbrella policy (Policy Number USO 56 13 11 66) for the period September 14, 2023 to September 14, 2026. Though issued in three separate annual renewals, the relevant language did not materially change from year to year. A true and correct copy of the most recent policy is attached as **Exhibit "4."**

28.    The policy contains the following coverage provisions for "personal and advertising injury":

**1.** We will pay on behalf of an insured those sums in excess of the "retained limit" that an insured becomes legally obligated to pay by reason of liability imposed by law or

assumed by an insured under an "insured contract" as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies.

. . .

**2.** This insurance applies to:

. . .

**b.** "Personal and advertising injury" only if:

(**1**) The "personal and advertising injury" is caused by an "offense" arising out of your business;

(**2**) The "offense" causing the "personal and advertising injury" was committed during the "policy period"; and

(**3**) The "offense" takes place in the "coverage territory".

29.    The policy also contains the following exclusions applicable to the policy's "personal and advertising injury" coverage:

This insurance does not apply to:

. . .

17. "Personal and advertising injury":

a. Caused by or at the direction of the "Insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the "Insured" with knowledge of its falsity.

c. Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the Policy Period.

. . .

g. Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

. . .

i. Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

30.    The policy contains the following definitions:

1. "Advertisement"6 means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

. . .

23. "Personal and advertising injury" means injury other than "bodily injury", arising out of one or more of the following offenses:

323649_1.docx

Complaint

. . .

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    . . .

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright or slogan in your "advertisement".

    "Offense" means an offense included in the definition of "personal and advertising injury". All damages that arise from exposure to the same act, publication or infringement are considered one "offense".

. . .

33. "Suit" means a civil proceeding which seeks monetary damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies. "Suit" includes:

    a. an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

    b. any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**CORRESPONDENCE BETWEEN UTW AND OSIC**

31.    UTW submitted the claim information with coverage analysis in a letter

dated June 19, 2025. A true and correct copy of that letter is attached as **Exhibit "4."**

32.    That same day, OSIC requested additional documents from the First Underlying Action, and they were provided also on that same day (June 19, 2025).

33.    On July 30, 2025, having received no response, UTW submitted a follow-up letter advising OSIC that it had failed to abide by applicable California law requiring insurers to respond with a coverage determination within 40 days of tender. A true and correct copy of that letter is attached as **Exhibit "6."**

34.    On August 22, 2025, OSIC replied via letter informing UTW that both OSIC and OCIC disclaimed any obligation to defend or indemnify claims from the First Underlying Action. A true and correct copy of that denial letter is attached as **Exhibit "7."**

35.    Following tender of the Second Underlying Action, OSIC and OCIC denied any obligation to defend or indemnify that action as well in a letter dated November 21, 2025. A true and correct copy of that denial letter is attached as **Exhibit "8."**

### ALLEGATIONS IN THE FIRST UNDERLYING ACTION TRIGGER POTENTIAL COVERAGE UNDER OFFENSE "f"

### Elements for Potential Coverage under Offense "f"

36.    OSIC's policy defines "personal and advertising Injury" involving offense "f" as consisting of five relevant elements: (1) "damages because of 'personal and advertising injury'"; (2) "injury … arising out of"; (3) "advertising idea/use"; (4) "of another's"; and (5) "in your 'advertisement[.]'" [**Exhibit "3,"** p. 50/162]

37.    The same elements exist for offense "f" under the OCIC policy, rendering the analysis below equally applicable to the OCIC policy.

### Element One: "Damages Because of 'Personal and Advertising Injury'"

38.    OSIC promised to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury.'" [**Exhibit "3,"** p. 40/162]

39.     The "damages because of 'personal and advertising injury'" policy language only requires that "damages" (as opposed to injunctive relief alone) be available under a "personal and advertising injury" offense.

40.     The factual assertions (including examples and photographs) clarify that UTW has allegedly taken Counterclaimants' "advertising idea" (using "PrivacyPod" in advertising to promote high quality, weatherproof tents) which was incorporated into UTW's advertising on its website and on various social media platforms.

41.     Counterclaimants allege that "PrivacyPod" is confusingly similar to its own "advertising idea" of "PrivatePod" that has provided substantial commercial benefits and customer goodwill, distinguishing Counterclaimants' products from those of competitors in the industry.

42.     The Counterclaimants allege entitlement to traditional damages as a result of "loss of income, profits, and goodwill." [**Exhibit "1,"** ¶ 231] Further damages are sought in the form of attorneys' fees.

43.     The Counterclaimants seek a declaration that the First Underlying Action "is an exceptional case in favor of Defendants pursuant to 35 U.S.C § 285." [**Exhibit "1,"** p. 48/49] This would result in the court "grant[ing] [Counterclaimants] their reasonable expenses and costs incurred, including attorneys' fees, in defending against the Amended Complaint and in asserting these Counterclaims." [**Exhibit "1,"** p. 48/49]

**Element Two: "Injury Arising Out Of" a Listed "Offense"**

44.     The "injury arising out of" element is met in the counterclaims by allegations that the injury grew out of, or had a connection with, UTW's use of another's (Counterclaimants') advertising idea in its "advertisement."

45.     The injury need only "arise out of" the offense of "use of another's advertising idea in your 'advertisement.'"

46.     The "personal and advertising injury" allegedly occurred from the misappropriated advertising. Counterclaimants, through the counterclaim allegations,

explicitly allege that UTW wrongfully used Counterclaimants' advertising idea in UTW's own marketing efforts.

47.    The First Underlying Action alleges UTW's *use* of another's advertising ideas to promote sales, that is, promoting the weatherproof tents with the "PrivacyPod" in an attempt to benefit from the accumulated goodwill of Counterclaimants' confusingly similar "PrivatePod" advertising idea. [**Exhibit "1,"** ¶¶ 228, 237]

48.    Counterclaimants alleged that its advertising ideas were used on UTW's website and social media pages. [**Exhibit "1,"** ¶¶ 220, 223–25]

49.    Therefore, the injury alleged in the underlying case potentially "arises out of" the listed offense of "use of another's advertising idea in the insured's 'advertisement,'" and the damages flow from that injury.

## Element Three: "Advertising Idea/Use"

50.    An "advertising idea" is not limited to positive qualities of an insured's products. It includes anything related to their promotion that renders them desirable.

51.    The promotion of weatherproof tents by both UTW and Counterclaimants on numerous Internet sites amounts to advertising, as laymen understand that term, and as the policy defines the term.

52.    Counterclaimants allege they have proprietary rights in the term "PrivatePod" that have been infringed by UTW's use of the confusingly similar "PrivacyPod." [**Exhibit "1,"** ¶ 219]

53.    Counterclaimants further allege that they have used the term in marketing efforts as a method of communicating to consumers the "nature and quality of Defendants' tent products." [**Exhibit "1,"** ¶ 215]

54.    The Counterclaims specify several instances in which UTW allegedly misused the "PrivacyPod" advertising idea:

> 220. Plaintiff [UTW] sells its tent products through some of
>
> the same channels of trade, such as Amazon, that also sell

Defendants' tent products. Plaintiff also owns the domain https://shopweatherpod.com/ and sells its tent products at the website connected to that domain name. . . .

. . .

223. Plaintiff's ["PrivacyPod" advertising idea] as it appears on its Amazon product listing is depicted below. [screenshot] https://www.amazon.com/Under-Weather-PrivacyPod-1-Person- Protection/dp/B09PC53CTD?th=1

224. Plaintiff's ["PrivacyPod" advertising idea] as it appears on its YouTube channel is depicted below. [screenshot] https://www.youtube.com/watch?v=KoGsJkfPJ80

225. Plaintiff's ["PrivacyPod" advertising idea] as it appears on its Facebook page is depicted below. [screenshot] https://www.facebook.com/UTWPods/videos/spooky-fun-with-the- privacypod/2508286702585459/

55.     The inferences raised by these allegations readily suffice to establish potential coverage even if the explicit facts pled in the complaint are held not to have done so with clarity.

56.     Even though Counterclaimants assert that UTW wrongfully took their advertising ideas, a "use" need not be wrongful in itself, but can be an offense if injuries allegedly arise out of that use, such as by misleading potential customers as to the source of a product.

57.     The Counterclaims of the First Underlying Action can be fairly understood to encompass a claim that the UTW misused Counterclaimants' "advertising idea" for the weatherproof tents in their promotional efforts.

58.     The fact the "advertising idea" also serves as a trademark is of no moment

59.     In promotions, the phrase "PrivacyPod" is a short hand to communicate

both a specific origin (its trademark purpose) as well as features of that make the tents desirable to the intended audience (its advertising idea purpose), thereby doing "double duty."

### Element Four: "of Another's"

60.    UTW was counter-sued with factual claims for "use of another's advertising idea" that allegedly violated federal law regulating acceptable business practices.

61.    Counterclaimants allege that UTW has used "PrivacyPod," which is allegedly confusingly similar to Counterclaimants' "PrivatePod" advertising idea.

62.    Thus, UTW is allegedly not the originator of the "advertising idea" and misusing a confusingly similar derivative of an advertising idea to which Counterclaimants assert proprietary rights.

### Element Five: "in Your Advertisement"

63.    Paragraphs 220 and 223–225 of the Counterclaims (quoted above) explicitly allege promotional use of the phrase on UTW's website and social media pages.

64.    The allegations of online promotional activity satisfy the policy's "advertisement" definition of "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters," which explicitly includes "material placed on the Internet."

### ALLEGATIONS IN THE FIRST UNDERLYING ACTION TRIGGER POTENTIAL COVERAGE UNDER OFFENSE "g"

### Elements for Potential Coverage under Offense "g"

65.    The test for coverage under offense "g," as relevant here, has two parts: (1) "infringement of slogan" and (2) "in [the insured's] 'advertisement'." [**Exhibit "3,"** p. 50/162]

66.    The same elements exist for offense "g" under the OCIC policy, rendering

the analysis below equally applicable to the OCIC policy.

**Counterclaimants Allege Infringement of the "PrivatePod" Slogan**

67.    Counterclaimants factually allege that UTW improperly and without authority used in its advertising, across a variety of websites, the allegedly confusingly similar term "PrivacyPod" that infringed on Counterclaimants' exclusive rights to "PrivatePod."

68.    Counterclaimants allege they have proprietary rights in the term "PrivatePod" that have been infringed by UTW's use of the confusingly similar "PrivacyPod." [**Exhibit "1," ¶** 219]

69.    Counterclaimants further allege that they have used the term in marketing efforts as a method of communicating to consumers the "nature and quality of Defendants' tent products." [**Exhibit "1," ¶** 215]

70.    By succinctly communicating the "nature and quality of Defendants' tent products," the term "PrivatePod" has been used by Counterclaimants as an "attention-getting phrase used in advertising or promotion," thereby satisfying the definition for "slogan" under applicable Ninth Circuit authority. *Hudson Ins. Co. v. Colony Ins. Co*., 624 F. 3d 1264, 1268 (9th Cir. (Cal.) 2010).

71.    Just as the phrase can simultaneously function as a trademark and "advertising idea," so too can it fill the role of a slogan to easily and memorably identify the advertised product.

72.    Based on the facts Counterclaimants alleged, there is a potential that UTW will be found liable for infringing the trademarked slogan "PrivatePod" due to UTW's use of the confusingly similar "PrivacyPod."

73.    Thus, the "infringement of slogan" covered offense is triggered and OSIC's duty to defend is further established.

**Allegedly Infringing Works Were Used in UTW's Advertising**

74.    The second element of offense "g" is also satisfied by Counterclaimants'

factual allegations against UTW for the same reasons articulated above in the discussion of offense "f."

### OSIC FAILED TO DEFEND ITS INSURED IN THE FIRST UNDERLYING ACTION

75.   Notice was provided to OSIC of the First Underlying Action and a defense was repeatedly requested. By joining in the same denial letter, OCIC acknowledged that this notice was effective to alert them as well.

76.   By issuing and delivering the Policy and taking payment from UTW, OSIC and OCIC agreed to provide a defense against all claims seeking damages for "personal and advertising injury."

77.   A defense was due to UTW as an insured under the Policy. The policy states that OSIC "will pay those sums that the insured becomes legally obligated to pay" and "will have the right and duty to defend an insured against any 'suit' seeking [damages because of 'personal and advertising injury']."

78.   Despite notice of the First Underlying Action, OSIC unreasonably denied any obligation to defend UTW.

79.   OSIC had a duty under the Policy to defend UTW in the First Underlying Action and OSIC owes payment for the reasonable defense expenses incurred by UTW in defending the First Underlying Action through its retained counsel.

80.   Because OSIC failed in its obligations, OCIC had an independent obligation to see to UTW's defense needs in the First Underlying Action.

### ALLEGATIONS IN THE SECOND UNDERLYING ACTION TRIGGER POTENTIAL COVERAGE UNDER OFFENSE "d"

### Elements for Potential Coverage under Offense "d"

81.   The Policy defines the "Personal and advertising injury" offense of "disparagement" as having three elements relevant here:  (1) "injury … arising out of"; (2) "oral, written or electronic publication of material"; (3) "that disparages a person's or organization's goods, products or services." [**Exhibit "3,"** p. 50/162]

82.     Each of the three elements described in the preceding paragraph is potentially met by the Second Underlying Action allegations, thereby triggering OSIC's duty to defend UTW.

83.     The same elements exist for offense "d" under the OCIC policy, rendering the analysis below equally applicable to the OCIC policy.

### Element One: "Injury Arising Out Of" Offense "d" Is Alleged

84.     The Second Underlying Action alleges injury in a variety of forms flowing from UTW's marketing activities.

85.     For example, the complaint alleges that UTW's marketing efforts "are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase." [**Exhibit "2,"** ¶ 62.]

86.     This customer confusion is further alleged to lead to injury to Counterclaimants: "[Counterclaimants] are suffering irreparable injury and have suffered substantial damages as a result of [UTW's] false advertising and unfair competition. If [UTW's] deceptive activities are not preliminarily and permanently enjoined by this Court, [Counterclaimants] and the consuming public will continue to be harmed." [**Exhibit "2,"** ¶ 63]

87.     Counterclaimants specifically allege a causal nexus between UTW's advertising activities and these resulting injuries: "The harm and damages sustained by [Counterclaimants] has been directly and proximately caused by [UTW's] advertisement, promotion, offering to sell, and sale of their falsely advertised products." [**Exhibit "2,"** ¶ 64]

### Element Two: "Oral, Written or Electronic Publication of Material" Is Alleged

88.     Like the First Underlying Action's allegations, the Second Underlying Action's allegations claim that the injurious statements were published on various websites, even including screenshots and direct links to the allegedly injurious content. [**Exhibit "2,"** ¶¶ 41, 52; **Exhibit "2,"** Exhibits A and B]

89.    This content is readily viewable on public websites like Amazon, thereby satisfying any reasonable definition of the term "publication."

**Element Three: "Disparages A[n] ... Organization's ... Products ..." Is Alleged**

90.    "Disparagement" coverage under offense "d" is not limited to the factual assertion of any singular common law tort. Rather, it provides coverage for "damages because of . . . injury . . . arising out of . . . oral, written or electronic publication of material that . . . disparages a person's or organization's goods, products or services."

91.    Under California law, a disparaging statement is one that satisfies two elements: (1) specifically refers to the plaintiff's product or business and (2) clearly derogates that product or business.

92.    The first element can be satisfied by implication even without express mention where it is reasonably clear that a specific competitor is targeted.

93.    Here, the specific reference requirement is satisfied by the widespread use of marketing material that uses the confusingly similar "PrivacyPod" term that naturally invites comparison to "PrivatePod" products.

94.    The Second Underlying Action specifically notes that Counterclaimants have suffered from the negative comparison created by UTW's allegedly false marketing claims: "Defendant's wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing that Defendant's products are superior to market competitors, including Plaintiffs,' which they are not." [**Exhibit "2,"** ¶ 62]

95.    This conclusion is supported by numerous fact allegations throughout the complaint:

> 28. . . . Defendant directly engages in unfair competition with Plaintiffs by . . . advertising . . . based on the false advertisement of the products' . . . characteristics, and/or qualities . . . .

. . .

49. . . . [I]n an attempt to delude consumers into the false belief that Defendant's Products are the equal of, or are superior to, Plaintiffs' products, Defendant's advertisements explicitly claim that the Products include aluminum or fiberglass tent poles, or framing.

. . .

51. . . . Defendant has made the false claims of aluminum or fiberglass tent pole construction as a highlighted feature in their product advertisements, listings, and descriptions.

52. Defendant explicitly asserts this fact in the "about this product" description in its Amazon product listing. . . .

. . .

56. Further, Plaintiffs' and Defendant's products appear in the same search results, making the material quality of the personal enclosure poles one of the only differentiating factors.

. . .

58. Viewers of Defendant's advertising . . . will inescapably take away the false message that they can achieve greater personal enclosure structural integrity with Defendant's personal enclosures.

59. Defendant's false advertisements and unfair competition have already hurt Plaintiffs' sales and profits by leading consumers to consider Defendant's falsely advertised products.

[**Exhibit "2"**]

96.     Taken together, these allegations assert that Counterclaimants' products have been "clearly derogate[d]" by UTW's promotion efforts, thereby satisfying the second element of a disparagement claim.

97.     The allegations in the Second Underlying Action evidence disparagement in that UTW's misleading statements, including its representations about materials used and the accompanying inferences of structural stability, communicated to consumers that its products were superior to those of Counterclaimants, causing consumers to purchase UTW's products over those of Counterclaimants.

98.     Because unfair competition claims, which are explicitly alleged in the Second Underlying Action, potentially include disparagement, the Second Underlying Action contains causes of action that can readily satisfy the requirements of offense "d."

99.     To the extent there is any *factual* dispute about what occurred that would evidence disparagement, that possibility alone triggers a duty to defend.

**OSIC FAILED TO DEFEND ITS INSURED IN THE SECOND UNDERLYING ACTION**

100.   Notice was provided to OSIC of the Second Underlying Action and a defense was repeatedly requested. By joining in the same denial letter, OCIC acknowledged that this notice was effective to alert them as well.

101.   By issuing and delivering the Policy and taking payment from UTW, OSIC and OCIC agreed to provide a defense against all claims seeking damages for "personal and advertising injury."

102.   A defense was due to UTW as an insured under the Policy. The policy states that OSIC "will pay those sums that the insured becomes legally obligated to pay" and "will have the right and duty to defend an insured against any 'suit' seeking [damages because of 'personal and advertising injury']."

103.   Despite notice of the Second Underlying Action, OSIC unreasonably denied any obligation to defend UTW.

104.   OSIC had a duty under the Policy to defend UTW in the Second

Underlying Action and OSIC owes payment for the reasonable defense expenses incurred by UTW in defending the Second Underlying Action through its retained counsel.

105. Because OSIC failed in its obligations, OCIC had an independent obligation to see to UTW's defense needs in the Second Underlying Action.

## ASSERTED EXCLUSIONS DO NOT APPLY

106. OSIC and OCIC has stated in both denial letters that they believe the Underlying Actions do not contain allegations that potentially meet the requirements of any coverage provision.

107. Nevertheless, OSIC and OCIC also cited various policy exclusions they believe may be applicable if the coverage provisions are satisfied.

108. The exclusions cited by OSIC and OCIC are listed above in Paragraphs 25 and 29.

109. Although referenced and quoted, none of the exclusions are addressed with any particularity or accompanies by any analysis to explain OSIC's theory of how each exclusion might apply to the fact allegations of either of the Underlying Actions. [**Exhibit "7,"** p. 14/16; **Exhibit "8,"** pp. 13–14/15]

110. These unexplained assertions are made despite the requirement under California law that an insurer only rely upon exclusions when they can adequately explain how each exclusion would preclude potential coverage in "all possible worlds." *Atlantic Mut. Ins. Co. v. J. Lamb, Inc*., 100 Cal. App. 4th 1017, 1039 (2002) ("Thus, an insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds.")

111. For legal reasons more appropriately explained in a Motion for Partial Summary Judgment, OSIC's constructions of the exclusions to encompass the claims at issue here are overbroad and/or unenforceable under California law.

## FIRST CAUSE OF ACTION

323649_1.docx

Complaint

**Declaration of Duty to Defend and Indemnify – First Underlying Action**

112.   Plaintiff UTW incorporates here each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged here.

113.   A valid contract exists between UTW and OSIC, namely, the CGL policy.

114.   A valid contract exists between UTW and OCIC, namely, Commercial Umbrella policy.

115.   UTW fully performed all of the obligations and conditions to be performed by it under the policies and both OSIC and OCIC have been paid premiums owed under the policies each month the policies were in force.

116.   By issuing and delivering the policies and taking payments, OSIC and OCIC agreed to provide a defense to UTW for any potentially covered  "personal and advertising injury" claims that lead to the insured's legal obligation to pay for damages, as those terms are defined in the Policy, and indemnify those same damages.

117.   OSIC and OCIC failed to provide a defense for UTW for the First Underlying Action.

118.   No exclusions excuse OSIC or OCIC from defending or indemnifying UTW in the First Underlying Action.

119.   An actual bona fide controversy exists between UTW, on the one hand, and OSIC and OCIC, on the other, which requires a judicial declaration by this Court regarding the insurers' duties under the policies, namely insurers' duties to provide a defense in the First Underlying Action, reimburse all reasonable defense expenses incurred by UTW in defending itself in the First Underlying Action, and indemnify any covered payments made to claimants in resolving the First Underlying Action.

120.   UTW has suffered and, absent action by this Court, will continue to suffer legally cognizable damages as a result of the insurers' inaction to provide a defense.

121.   UTW is entitled to relief from OSIC and OCIC.

**SECOND CAUSE OF ACTION**

**Breach of Contract – First Underlying Action**

122.   Plaintiff UTW incorporates here each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged here.

123.   A valid contract exists between UTW and OSIC, namely, the CGL policy.

124.   A valid contract exists between UTW and OCIC, namely, Commercial Umbrella policy.

125.   UTW fully performed all of the obligations and conditions to be performed by it under the policies and both OSIC and OCIC have been paid premiums owed under the policies each month the policies were in force.

126.   By issuing and delivering the policies and taking payments, OSIC and OCIC agreed to provide a defense to UTW for any potentially covered  "personal and advertising injury" claims that lead to the insured's legal obligation to pay for damages, as those terms are defined in the Policy, and indemnify those same damages.

127.   No exclusions excuse OSIC or OCIC from defending UTW the First Underlying Action.

128.   OSIC and OCIC have not acknowledged that they have obligations to defend and indemnify UTW in the First Underlying Action.

129.   OSIC and OCIC have breached their duties to defend UTW in the First Underlying Action.

130.   As a result of that breach, UTW has been damaged in the amount of reasonable defense expenses incurred in defending the First Underlying Action, and in an amount to be proved at trial, and for which Plaintiff UTW seeks payment, with interest thereon.

### THIRD CAUSE OF ACTION

### Breach of the Covenant of Good Faith and Fair Dealing – First Underlying Action

131.   Plaintiff UTW incorporates here each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged here.

132.   OSIC has not acknowledged that it has an obligation to defend or indemnify UTW in the First Underlying Action.

133.   An implied duty of good faith and fair dealing is implicit in every contract, including insurance contracts.

134.   This confers upon the insurer a duty not to unreasonably deny a defense against potentially covered claims and not to withhold in bad faith payment of fees that the insurer is required to reimburse.

135.   OSIC acted unreasonably by denying any duty to defend the First Underlying Action based on an overly narrow reading of the "personal and advertising injury" coverage provision despite a detailed explanation from UTW's representatives explaining why potential coverage arose.

136.   OSIC acted unreasonably in not providing an adequate response to demands that it defend its insured, UTW, in the First Underlying Action.

137.   OSIC's actions have been unreasonable and a breach of its implied covenant of good faith and fair dealing with its insured, and has required UTW to incur fees in order to enforce the policy benefits applicable to the First Underlying Action.

138.   In denying policy benefits and in breaching its duty of good faith and fair dealing toward its insureds, OSIC has acted with malice, fraud or oppression.

## FOURTH CAUSE OF ACTION

### Declaration of Duty to Defend – Second Underlying Action

139.   Plaintiff UTW incorporates here each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged here.

140.   A valid contract exists between UTW and OSIC, namely, the CGL policy.

141.   A valid contract exists between UTW and OCIC, namely, Commercial Umbrella policy.

142.   UTW fully performed all of the obligations and conditions to be performed by it under the policies and both OSIC and OCIC have been paid premiums owed under

the policies each month the policies were in force.

143.   By issuing and delivering the policies and taking payments, OSIC and OCIC agreed to provide a defense to UTW for any potentially covered "personal and advertising injury" claims that lead to the insured's legal obligation to pay for damages, as those terms are defined in the Policy, and indemnify those same damages.

144.   OSIC and OCIC failed to provide a defense for UTW for the Second Underlying Action.

145.   No exclusions excuse OSIC or OCIC from defending or indemnifying UTW in the Second Underlying Action.

146.   An actual bona fide controversy exists between UTW, on the one hand, and OSIC and OCIC, on the other, which requires a judicial declaration by this Court regarding the insurers' duties under the policies, namely insurers' duties to provide a defense in the Second Underlying Action, reimburse all reasonable defense expenses incurred by UTW in defending itself in the Second Underlying Action, and indemnify any covered payments made to claimants in resolving the Second Underlying Action.

147.   UTW has suffered and, absent action by this Court, will continue to suffer legally cognizable damages as a result of the insurers' inaction to provide a defense.

148.   UTW is entitled to relief from OSIC and OCIC.

**FIFTH CAUSE OF ACTION**

**Breach of Contract – Second Underlying Action**

149.   Plaintiff UTW incorporates here each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged here.

150.   A valid contract exists between UTW and OSIC, namely, the CGL policy.

151.   A valid contract exists between UTW and OCIC, namely, Commercial Umbrella policy.

152.   UTW fully performed all of the obligations and conditions to be performed by it under the policies and both OSIC and OCIC have been paid premiums owed under

the policies each month the policies were in force.

153.   By issuing and delivering the policies and taking payments, OSIC and OCIC agreed to provide a defense to UTW for any potentially covered  "personal and advertising injury" claims that lead to the insured's legal obligation to pay for damages, as those terms are defined in the Policy, and indemnify those same damages.

154.   No exclusions excuse OSIC or OCIC from defending UTW the Second Underlying Action.

155.   OSIC and OCIC have not acknowledged that they have obligations to defend and indemnify UTW in the Second Underlying Action.

156.   OSIC and OCIC have breached their duties to defend UTW in the Second Underlying Action.

157.   As a result of that breach, UTW has been damaged in the amount of reasonable defense expenses incurred in defending the Second Underlying Action, and in an amount to be proved at trial, and for which Plaintiff UTW seeks payment, with interest thereon.

## SIXTH CAUSE OF ACTION

### Breach of the Covenant of Good Faith and Fair Dealing

158.   Plaintiff UTW incorporates here each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged here.

159.   OSIC has not acknowledged that it has an obligation to defend or indemnify UTW in the Second Underlying Action.

160.   An implied duty of good faith and fair dealing is implicit in every contract, including insurance contracts.

161.   This confers upon the insurer a duty not to unreasonably deny a defense against potentially covered claims and not to withhold in bad faith payment of fees that the insurer is required to reimburse.

162.   OSIC acted unreasonably by denying any duty to defend the Underlying

claim based on an overly narrow reading of the "personal and advertising injury" coverage provision.

163.    OSIC acted unreasonably in not providing an adequate response to demands that it defend its insured, UTW, in the Second Underlying Action.

164.    OSIC's actions have been unreasonable and a breach of its implied covenant of good faith and fair dealing with its insured, and has required UTW to incur fees in order to enforce the policy benefits applicable to the Second Underlying Action. In denying policy benefits and in breaching its duty of good faith and fair dealing toward its insureds, OSIC has acted with malice, fraud or oppression.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff UTW prays for judgment against Defendant OSIC as follows:

1.    A judicial declaration that OSIC has a duty under its Policy to defend UTW in the Underlying Actions;

2.    A judicial determination that OSIC has breached its contract obligation to defend UTW in the Underlying Actions;

3.    A judicial determination that OSIC has breached its contract obligation of good faith and fair dealing to its insured, UTW, through its unreasonable handling of the claims based on the Underlying Actions;

4.    An award to UTW of damages against OSIC for its breach of the Policy contract;

5.    A judicial determination that OSIC has breached its implied covenant of good faith and fair dealing;

6.    An award to UTW of damages against OSIC for its breach of its covenant of good faith and fair dealing;

7.    An award of UTW's reasonable attorneys' fees incurred in this lawsuit in accord with applicable California law;

8.      An award of the costs of this suit;

9.      An award of prejudgment interest; and

10.     For such other and further relief as this Court may deem just and proper.


Dated: December 10, 2024                    **GAUNTLETT LAW**


By:____/s/ James A. Lowe_____
                                            David A. Gauntlett
                                            James A. Lowe

                                            Attorneys for Plaintiff
                                            Under the Weather, LLC


## JURY DEMAND

In accordance with Fed. R. Civ. P. 38, Plaintiff hereby requests a trial by jury of all issues triable by a jury.


Dated: December 10, 2024                    **GAUNTLETT LAW**
                                            By:____/s/ James A. Lowe_____
                                            David A. Gauntlett
                                            James A. Lowe

                                            Attorneys for Plaintiff
                                            Under the Weather, LLC

1

## <u>EXHIBITS TO COMPLAINT</u>

2   **Exhibit "1"**        Answer and Counterclaim in First Underlying Action

3   **Exhibit "2"**        First Amended Complaint in Second Underlying Action

4   **Exhibit "3"**        OSIC CGL Policy

5   **Exhibit "4"**        OCIC Commercial Umbrella Policy

6   **Exhibit "5"**        June 19, 2025 Coverage Analysis Letter from UTW

7   **Exhibit "6"**        July 30, 2025 40-Day Letter from UTW

8   **Exhibit "7"**        August 21, 2025 Denial from OSIC

9   **Exhibit "8"**        November 21, 2025 Denial from OSIC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28